IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**DJ WARD**                                                                                      **PLAINTIFF**

**v.**                                                **CIVIL ACTION NO. 1:21-CV-00104-GHD-DAS**

**LOWNDES COUNTY, MISSISSIPPI;**
**SHERIFF EDDIE HAWKINS;**
**CAPTAIN RIC HIGGINS; and**
**LIEUTENANT KEVIN FORRESTER,**
**In their official capacities**                                           **DEFENDANTS**

## OPINION GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Presently before the Court is the Defendants' Motion for Judgment on the Pleadings [16], in response to Plaintiff DJ Ward's Complaint alleging violations of the deceased's rights under 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution [1, at 1]. The Plaintiff also makes claims of gross negligence, abuse of process, and knowingly and intentionally making false statements to a court of law to obtain a search warrant [*Id.*]. For the reasons stated herein, the Defendants' Motion shall be granted.

### I.    Factual and Procedural Background

### A. Contentions in the Complaint and Answer

The Plaintiff is a resident of Lowndes County [1, at ¶ 1]. Since January 2020, he has resided at 251 Pickensville Road, Columbus, Mississippi [Id., at ¶ 7]. Defendant Lowndes County, Mississippi (herein "County") is a political subdivision of the State of Mississippi [1, at ¶ 5; 14, at ¶ 5]. Defendant Eddie Hawkins was, at all times material to this case, the Sheriff of Lowndes County, Mississippi; he is also a resident of Lowndes County [1, at ¶ 2; 14, at ¶ 2]. Defendant Ric Higgins was, at all times material to this case, a Captain in the Lowndes County Sheriff's Department (here "Sheriff's Department") and a resident of Lowndes County [1, at ¶ 3;

1

14, at ¶ 3]. Defendant Kevin Forrester was, at all time material to this case, a Lieutenant in the Sheriff's Department and a resident of Lowndes County [1, at ¶ 4; 14, at ¶ 3].

On June 23, 2021, the Plaintiff filed his Complaint [1]. In it, he articulates the following facts. On or around October 2, 2020, the Lowndes County Sheriff's Department executed a search warrant for the Plaintiff's residence at 251 Pickensville Road, Columbus, Mississippi [1, at ¶ 7]. Several officers from two law enforcement agencies entered the residence in search of illegal items [*Id.*, at ¶¶ 7-8]. No one from these agencies provided the Plaintiff with a copy of the search warrant before entering his residence [*Id.*, at ¶ 9]. The Plaintiff's home alarm alerted him to the fact that the officers had entered his residence, and he then went from his place of work to his residence [*Id.*, at ¶¶ 11- 12]. There, he found that the Sheriff's Department had "ransacked" his residence, damaged his front door, ripped out his HVAC vent, damaged his personal property, and took his property, including a handgun, a loaded magazine, and two boxes of ammunition [*Id.*, at ¶¶ 12-13]. The Defendants have not returned this property to the Plaintiff, nor have they paid for the damage done to his property during this incident [*Id.*, at ¶ 18].

The Plaintiff states that, due to this incident, he no longer felt safe in his home, and did not reside there until his door was repaired; he subsequently had to spend his own time and resources to repair the other damage to his home [*Id.*, at ¶¶ 13-14]. The Plaintiff contacted the Sheriff's Department to lodge a complaint, and was told that he needed to submit a written statement [*Id.*, at ¶ 15]. The Plaintiff states that he has attached a copy of this written statement to his Complaint, titled Exhibit 1 [*Id.*, at ¶ 15], but the Complaint itself does not actually have this attachment with it.

In response to his complaint with the Sheriff's Department, the Plaintiff received a call from an officer, who told him something "to the effect that he was in the wrong place at the

2

wrong time" [*Id.*, at ¶ 16]. The Plaintiff has requested a written response to his written complaint to the Sheriff's Department, but the Defendants have not provided him with such a response [*Id.*, at ¶ 17]. The Plaintiff states that although the Defendants required a written complaint, they did not provide a meaningful administrative process because this process did not provide any resolution or written adjudication of his complaint [*Id.*, at ¶¶ 16-17].

In his Complaint before this Court, the Plaintiff alleges that the Defendants violated 42 U.S.C. § 1983 and deprived the Plaintiff of his rights as guaranteed by the Fourth, Fifth, and Fourteenth Amendments [*Id.*, at ¶ 19]. He argues that the County, through its agents and employees, acted wantonly, maliciously, and with willful disregard and careless indifference for the rights of the Plaintiff [*Id.*, at ¶¶ 20-22]. He further argues that the Defendants violated his rights by using excessive force [*Id.*, at ¶ 22].

The Plaintiff alleges that the employees of Defendant County, Defendant Hawkins, and the Sheriff's Department were acting under color of state law and authority [*Id.*, at ¶ 23]. He alleges that the Defendants owed him a duty to property train, employ, and supervise all employees who were involved in the search incident at the Plaintiff's residence [*Id.*, at ¶ 24], and that the Defendants breached this duty by failing to provide proper training and supervision to the employees who were involved in this incident [*Id.*, at ¶¶ 25-26].

Specifically, the Plaintiff alleges that the Defendants knew or should have known that the Plaintiff resided at the 251 Pickensville Road residence and the persons identified in the Sheriff's Department's search warrant did not reside there [*Id.*, at ¶ 29]. Finally, the Plaintiff alleges that Defendants Higgins and Forrester knowingly and intentionally made false statements to obtain said search warrant [*Id.*, at ¶ 30].

On September 15, 2021, the Defendants filed their Answer and Affirmative Defenses [14]. In this document, they lay out their own version of the facts in this case. The Defendants state that the Plaintiff was a tenant of Lenton Dismuke, who owns the 251 Pickensville Road property at the heart of this dispute [14, at 1]. The Defendants state that the Plaintiff's claims arise from an allegedly faulty search warrant issued for this property [*Id.*]. The Defendants state that the Plaintiff was not on "the narcotics division radar" prior to this incident [*Id.*, at 2]. They explain that Lenton Dismuke is the father of convicted criminal Rodriguez Dismuke, who started serving a 13-year sentence on drug charges in August 2020 [*Id.*]. The Defendants state that law enforcement authorities had developed an extensive record of drug trafficking activity at the 251 Pickensville Road property, including incidents in 2017 and 2019 that resulted in substantial recoveries of illegal drugs [*Id.*].

The Defendants state that an investigation into Rodriguez Dismuke led to the search warrant at the heart of this proceeding [*Id.*, at 2-3]. According to the Defendants, authorities were targeting known associates of Rodriguez Dismuke; these suspects' names are Henry Lee Mays, Jr., and Kelcey Kilimanjaro Allen [*Id.*]. The Defendants state that the Plaintiff was not a suspect at the time the search warrants were issued, was not known to be renting the 251 Pickensville Road property, and has not been charged with any crimes [*Id.*, at 3].

The Defendants argue that information, based on confidential information related to ties between Rodriguez Dismuke and the above-named suspects, was presented to an appropriate judicial officer, and warrants were subsequently issued, including the document warrant for the 251 Pickensville Road property [*Id.*]. They further state unequivocally that no one lied to a judge [*Id.*]. At the 251 Pickensville Road property, officers found THC Vape cartridges matching ones found at a separate property owned by Lenton Dismuke and at which suspect

Henry Lee Mays, Jr., resided [*Id.*, at 3-4, n. 2-3]. Officers also found the Plaintiff's loaded handgun [*Id.*]. In light of these findings, the officers kept the scene secure until they were able to get a full search warrant [*Id.*]. After receiving this second warrant, they completed a full search of the property [*Id.*]. Officers also found opened mail addressed to Rodriguez Dismuke, a rent receipt from Lenton Dismuke, a ledger containing drug evidence, and packaging commonly used for drug trafficking [*Id.*]. Upon review of this second warrant affidavit, provided by the Plaintiff as part of his Motion to Seal though it has not yet become part of the record, the Court notes that the affidavit only mentions the finding of a firearm at the Plaintiff's residence, and does not mention THC Vape cartridges or any of the other items found by the officers.

### B. Defendants' Motion for Judgment on the Pleadings

On October 18, 2021, the Defendants filed their Motion for Judgment on the Pleadings [16] and its corresponding Memorandum in Support [17]. In this Motion, the Defendants argue that the Plaintiff's Complaint should be dismissed because his allegations lack factual support, he has not suffered any constitutional or municipal violation, the Defendants being sued in their official capacities are entitled to dismissal, and the Plaintiff's state law claims are barred by the Mississippi Tort Claims Act [16]. The Defendants expound on these arguments in their supporting Memorandum [17]. They allege that the claims against Defendants Hawkins, Higgins, and Forrester should be dismissed because they are being sued in their official capacities and therefore these claims are duplicative of the claims against Defendant County [17, at 1, 7]. The Defendants further argue that the claims should be dismissed under a theory of qualified immunity [*Id.*, at 6-20].

On November 14, 2021, the Plaintiff filed his Motion to Stay Ruling on Defendants' Motion for Judgment on the Pleadings and Permit Discovery [20]. In it, he makes plain his

desire to sue Defendants Hawkins, Higgins, and Forrester in their official capacities, not individually, and argues that this decision makes an inquiry into qualified immunity unnecessary [20, at 2]. He clarifies his dispute in the case *sub judice*, stating that:

> Plaintiff makes rather simple essential claims at this point: 1) The County has taken his property, a weapon, without compensation and due process; 2) Plaintiff property inside his apartment was damaged in the process of violating his constitutional rights; 3) the administrative remedy provided by the county did not meet minimum standards of due process in that he filed a written complaint about the damage to his property and the seizure of his weapon and to this date there has been no official response.

[20 , at 3]. The Plaintiff then asks for permission to engage in discovery, arguing that the Defendants' Motion for Judgment on the Pleadings should be treated as a motion for summary judgment, before finally arguing that the motion is untimely [*Id.*].

On November 22, 2021, the Defendants filed their Response in Opposition to the Plaintiff's Motion to Stay and Permit Discovery [21]. In it, they argue that the Plaintiff's Motion should be denied, and reiterate their arguments from their Motion for Judgment on the Pleadings [*Id.*]. They also contend that the Court should treat their Motion as filed, i.e. as a judgment on the pleadings, rather than a motion for summary judgment [*Id.*, at 4].

On January 24, 2022, the Magistrate Judge assigned to this case issued an Order staying the case [23]. On January 26, 2022 and February 1, 2022, the Magistrate Judge issued two separate Unopposed Agreed Protective Orders in which he ordered that the Defendants' investigative file would be provided to the Plaintiff and shall be filed under seal after the Court grants the appropriate motion to file said documents under seal [25; 27]. On April 27, 2022, the Plaintiff filed, on behalf of all parties, an unopposed Motion to File Documents Under Seal in which he requested that the Court direct the Clerk of the Court to file Exhibits 1 and 2 under seal [38]. On May 2, 2022, the Court granted this Motion [40]. However, the Plaintiff has yet to file

6

the appropriate filings to make these documents a formal part of the record and they remain, as yet, undocketed.

On February 8, 2022, the Magistrate Judge issued an Order staying the case and allowing the parties to conduct limited discovery, in effect granting in part and denying in part the Plaintiff's Motion to Stay and Permit Discovery [28]. Following this discovery period, on April 25, 2022, the Plaintiff filed his Response to the Defendants' Motion for Judgment on the Pleadings, incorrectly identified in the Response as a motion to dismiss [37]. The Plaintiff relies on depositions and other documents attached to his Motion [*Id.*], and he identifies the two sets of documents that he intends to file under seal, namely an affidavit and warrant for a document search at the Plaintiff's residence and an affidavit and warrant for a drug search [*Id.*, at 2]. Both warrants were obtained by Defendant Forrester, who—according to the Plaintiff—did not go to the Plaintiff's residence and was not present during the incident [*Id.*].

In sum, the Plaintiff contends the following points:

(1) As a factual matter, the Defendants failed to conduct a reasonable investigation before seeking search warrants and/or omitted key details when requesting said warrants from a judge;

(2) This failure and/or omission equates to a failure to train or supervise, creating liability for Defendant County in such a way that qualified immunity would not be applicable; and

(3) The taking of and damage to the Plaintiff's personal property equated to violations of the Plaintiff's constitutional rights, in that said property has not been returned and the Plaintiff has not been reimbursed for the damage [*Id.*, at 7-10].

7

On May 5, 2022, the Defendants filed their Reply in Support of their Motion for Judgment on the Pleadings [43]. In it, they note that the Plaintiff has attached discovery material to his response, and thereby transformed this matter from an adjudication regarding judgment on the pleadings to one regarding summary judgment [*Id.*, at 1]. The Defendants also reiterate and expound on the arguments that they presented in their Motion [*Id.*]. They argue that the Plaintiff's claims against the latter three Defendants, who have been sued in their official capacities, are duplicative of the claims against Defendant County and must therefore be dismissed [*Id.*, at 1-3]. They also argue that the Plaintiff did not dispute their contentions that his claims regarding punitive damages and injunctive relief should be dismissed; similarly, they argue that the Plaintiff did not dispute that his state law claims should be dismissed because of his failure to send a Notice of Claim [*Id.*]. Finally, they argue that the claims against Defendant County should be dismissed because the Plaintiff failed to show that he suffered a constitutional violation and that one of Defendant County's policies was the "moving force" behind said alleged constitutional violation [*Id.*, at 3-8].

The matter is now ready for review.

## II. Legal Standards

### A. Judgment on the Pleadings and Summary Judgment

The Federal Rules of Civil Procedure states that a party may move for judgment on the pleadings after the pleadings are closed, so long as it is still early enough in the process that trial would not be delayed. Fed. R. Civ. P. 12(c). However, if matters outside of the pleadings are presented to and not excluded by the court, a motion under this rule must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d)

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials

on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). This rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. The party moving for summary judgment bears the burden of identifying its basis for the motion, and must point to specific parts of the record that support its contention of an absence of a genuine dispute of material fact. *Id.* at 323.

After the moving party does so, the burden shifts to the non-moving party, which must "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). When there is a dispute about the facts, the Court must view the facts in the light most favorable to the non-moving party and likewise must draw reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F.App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

Any claim that is not raised in a response to a defendant's motion for summary judgment is deemed to be waived. *Aldrup v. Caldera*, 274 F.3d 282, 288 (5th Cir. 2001). Moreover, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the

9

response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citing *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas*, 136 F.3d at 458. That said, summary judgment "must be used cautiously or it may lead to drastic and lethal results." *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980).

## B. Duplicative Claims, Qualified Immunity, Monell, and Claims of Alleged Failures to Train And/Or Supervise

"For purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987); *see also Breland v. Forrest County Sheriff's Dept.*, 2013 WL 1623997, at *5 (S.D. Miss. Apr. 15 2013). Therefore, the legal inquiry for all Defendants in this case relates to 42 U.S.C. § 1983 with respect to a local government entity, in this case Lowndes County.

The Supreme Court has held that, under § 1983, local governing bodies like Lowndes County can be sued for alleged constitutional violations arising from policy statements, ordinances, regulations, official decisions, or governmental "custom." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-91 (1978); *see also Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). Moreover, this policy, custom, or the like must be the "moving force" behind the alleged constitutional violation. *Brown v. Bryan County, Oklahoma*, 219 F.3d 450, 457 (5th Cir. 2000). "[U]nder certain circumstances, § 1983 liability can attach for a single decision not to train an individual officer even where there has been no pattern of previous constitutional violations." *Id.*, at 459. "Inadequacy of police training can also serve as the basis for municipal liability under § 1983, but only if the failure to train

10

amounts to a deliberate indifference to the rights of individuals who come into contact with the police." *O'Neal v. City of San Antonio, Texas*, 344 Fed.Appx. 885, 888 (5th Cir. 2009) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388). However, "if the training of police officers meets state standards, there can be no cause of action for a failure to train absent a showing that 'this legal minimum of training was inadequate to enable [the officers] to deal with the "usual and recurring situations" faced by jailers and peace officers.'" *Id.* (quoting *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992)).

### C. The Fourth Amendment

Although the Fourth Amendment guards against unreasonable search and seizures, "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. U.S.*, 441 U.S. 238, 258 (1979). "[T]he manner in which a warrant is executed is subject to later judicial review as to its reasonableness." *Id.*; *see also U.S. v. Webster*, 750 F.2d 307, 318 (5th Cir. 1984). Indeed, "the ultimate touchstone of the Fourth Amendment is 'reasonableness,'" not whether law enforcement officers have a warrant. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively* justify [the] action.' The officer's subjective motivation is irrelevant." *Id.*, at 404 (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)) (emphasis in original).

### D. The Mississippi Tort Claims Act

The Mississippi Tort Claims Act states that the State and its political subdivisions like Lowndes County have waived their sovereign immunity with respect to claims for money damages arising out of torts. Miss. Code Ann. § 11-46-5(1) (2013). To bring a claim under this Act, a person must exhaust all procedures within a governmental entity and file a notice of claim

11

with the chief executive officer of the government entity at least ninety days before instituting a lawsuit. Miss. Code Ann. § 11-46-11(1) (2013). However, a governmental entity and its employees shall not be liable for any claim "[a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." Miss. Code Ann. § 11-46-9(1)(c).

### III. Analysis

In presenting his claims and case in chief, the Plaintiff makes several conclusory statements. He contends that properly trained and supervised officers would have noticed the photos, framed documents, and other wall hangings in the Plaintiff's residence [37, at 2]. Yet he does so without a reference to case law or other legal support.

The Plaintiff notes that only two incidents referenced in the affidavits involved said property, and those incidents took place 32 and 13 months prior to the incident that prompted the case *sub judice* [*Id.*, at 4]. He then alleges that the affidavits underpinning the warrants relied on outdated information and lacked evidence to support the conclusion that either Rodriguez Dismuke or Henry Lee Mays, Jr., had recently lived or been observed at the Pickensville Road property rented by the Plaintiff [*Id.*, at 3]. However, he does not present case law to support the notion that it would be unreasonable to rely in part on information about events that took place 13 and 32 months prior to an incident when seeking a warrant, especially when coupled with information from other sources. The Court sees of no reason to think that such an action would be unreasonable in the case at bar.

The Plaintiff alleges that "[n]o one made even the most basic inquiry to determine" who lived at the Pickensville Road property and whether they had any connections to drug trafficking, criminal activity, or Rodriguez Dismuke [*Id.*, at 4, 8]. According to the Plaintiff (1) no one had performed surveillance on the property or made any effort to see who lived there; (2) no one checked the water and power records; (3) no one noticed that Rodriguez Dismuke's last known address was at a different location; (4) no one had observed any drug activity at the property recently; and (5) the officers involved in searching the property ignored the Plaintiff's university degrees and photos that were in plain sight [*Id.*, at 8]. In his view, "[n]o reasonable magistrate, properly informed of these facts, would have granted a search warrant based upon such incomplete facts" allegedly provided by Defendant Forrester [*Id.*]. He presents no case law to support this notion.

The Plaintiff argues that the affidavits used by the Defendants to obtain search warrants were "slight-of-hand" and "equivalent to false statements" [Id., at 8]. Again contending without case law or other legal support, the Plaintiff states that "[w]hen there are material omissions in affidavits then having the judicial officer grant a search warrant is no protection" [Id.].

Citing a 2019 case from the Fifth Circuit Court of Appeals, the Plaintiff argues that the case *sub judice* is comparable to a false arrest claim in which an affiant seeking a warrant includes a false statement, knowingly or intentionally, or with reckless disregard for the truth or omits exculpatory information from an affidavit [Id., at 6-7]. In the eyes of the Plaintiff, the "yardstick for judging the conduct of the affiant would be a high degree of candor" and a recognition that "an omission to inquire, a sort of voluntary ignorance, is tantamount to a falsehood" [*Id.*, at 7]. However, he fails to present case law or legal support for his opinion on what the standard should be. Moreover, he fails to prove that there was a deliberate omission to

inquire or a reckless disregard for the truth. The facts as presented in the warrant affidavits present sufficient information and a colorable argument for why a warrant was needed. Could the officers have done more investigatory work that may have obviated the need for said warrant? Absolutely. Were they required to do this work? The Plaintiff presents no legal proof for such a requirement.

However, the Plaintiff does not lay the blame at the feet of Defendant Forrester. Rather, he argues that the Defendants' allegedly offending conduct was the product of poor training and supervision [*Id.*]. However, he does not point to any training practice or official policy from Defendant County, instead appearing to take an approach reminiscent of the *res ipsa loquitor* theory of negligence. This is especially unavailing for two reasons. Firstly, the law requires that the Plaintiff point to a specific policy, custom, or the like enacted by the Defendant that was the "moving force" behind the alleged violation; and secondly, the Plaintiff has failed to rebut the Defendants' contention that the officers in question were adequately trained under state standards. See supra Part II.B. The Plaintiff's case fails without these showings.

The Plaintiff also argues that the taking of his personal property amounted to an unconstitutional seizure of property, and presents a modicum of case law on the topic [*Id.*, at 9]. While the taking of his firearm and ammunition was certainly a taking, it was not unreasonable under the circumstances. Moreover, the Plaintiff has failed to demonstrate that he has exhausted the appropriate administrative and legal avenues available to him to secure the return of his property through the ordinary course of action. Documenting the filing of an appropriate claim is key in this regard, as would be any response from the authorities such as the Defendants or the district attorney that would present an explanation for refusing to return the Plaintiff's property.

At which point, a claim under the Mississippi Constitution may be warranted, but this case is not there yet, given the record currently before the Court.

Viewing the Plaintiff's Complaint charitably, he presents a two-part claim: that the Defendants violated his Fourth Amendment rights by engaging in an unreasonable search and seizure of his property, i.e. the underlying constitutional violation, and that the Defendants' actions amounted to a § 1983 claim under Monell for a failure to train, in that they allegedly failed to train their officers to investigate to the point that they would have realized that the Plaintiff, rather than the subjects of the search warrant, resided in the property in question. This claim fails on both parts.

To the extent that the property damage alleged by the Plaintiff occurred during reckless or unreasonable actions performed by police, then the appropriate avenue for making a claim would be the Mississippi Tort Claims Act. However, the Plaintiff fails to state his claim under this statute, and even to the extent that it can be read into the Complaint, the Plaintiff has failed to follow the terms of this statute by appropriately filing a notice of claim with the Defendants. Therefore, in so far as this argument is present in the case *sub judice*, it must be dismissed. The Plaintiff must go through the appropriate steps by filing his Notice of Claim, and then presenting his claim in state court.

### IV. Conclusion

As to the search in light of the affidavit, the Court finds that the search was not unreasonable under the circumstances. Although it appears apparent from the record that the officers made a mistake in their belief that the 251 Pickensville Road property was still actively being used for drug trafficking, the Defendants have presented support for their contention that their action was nevertheless reasonable, in light of a separate source providing information

about the property and its history with criminal activity. In contrast, the Plaintiff has not presented any evidence showing why the officers' actions, while mistaken, were unreasonable. Although the officers could have done more due diligence or searched the property with more delicacy, the Plaintiff has presented no evidence to support the argument that they were under a duty to do so.

As to the "seizure" in so far as to the damage done by officers while searching the Plaintiff's residence, the Court finds that it was not unreasonable under the circumstances, in light of the Supreme Court's holding in *Dalia* and the Plaintiff's failure to present the damages in detail as going beyond the norm for drug searches. Even if this were not so, the appropriate defendants would be the individual officers and not the Defendants *sub judice*. With respect to these Defendants, there is no case here as the Plaintiff fails to point to a specific policy as the motivating factor behind the alleged violation.

As to the "taking" with respect to the Plaintiff's firearm, the Court finds that it does not meet the elements under the law, and that the Plaintiff has failed to exhaust his remedies in this regard under state law and that his claims as presented here are inapplicable, though other avenues likely remain available for him to pursue the return of his property.

For these reasons, the Court finds that granting the Defendants' Motion for Judgment on the Pleadings [16], reviewed under a summary judgment standard, is warranted and shall be granted. An Order in accordance with this Opinion shall issue this day.

THIS, the \_\_25th\_\_ day of July, 2022.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE